UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| KESHIA LEE WILSON,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>DEPT OF CORRECTIONS SOUTH DAKOTA; KELLIE WASKO, Secretary of State at South Dakota womans prison; AARON MILLER, Warden at South Dakota womans prison; DOUG COOK, Case manager at South Dakota womans prison; and ANDREA FOSHIEM, Case manager at South Dakota womans prison,<br><br>　　　　　　　　Defendants. | 3:23-CV-03009-RAL<br><br><br>OPINION AND ORDER DENYING VARIOUS MOTIONS AND 1915A SCREENING |

Plaintiff Keshia Lee Wilson, a former inmate at the South Dakota Women's Prison, filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Wilson's motion for leave to proceed in forma pauperis, and she timely paid her initial filing fee. Doc. 7. This Court also denied Wilson's motion to appoint counsel and motion for reconsideration of order granting leave to proceed in forma pauperis. Doc. 7 at 2–3; Doc. 9 at 1. Wilson filed a motion to subpoena and a motion to amend/correct her monthly fee. Docs. 10; 16. This Court now screens Wilson's complaint under 28 U.S.C. §§ 1915 and 1915A.

I. **1915A Screening**

　　A. **Factual Allegations of Wilson's Complaint**

Wilson alleges that Defendants violated her rights by releasing her from the South Dakota Women's Prison (SDWP) without properly following South Dakota Department of Corrections

(SD DOC) parole procedures and by improperly arresting her after she violated her conditions for parole. Doc. 1 at 13, 15–16.

On December 6, 2022, an attempt to locate (ATL) warrant was issued for Wilson's arrest because her parole officer at that time, Amanda Shaffer, claimed that she had no contact with Wilson. Id. at 13. Wilson alleges that the warrant was "unreasonable, unneeded but also unjustified" because she had daily phone contact with Shaffer and Shaffer came to Wilson's address but did not knock on the door. Id. On December 7, 2022, Shaffer texted Wilson that if by 5 p.m. she did not arrive at the parole office in Sioux Falls, South Dakota, then she would be taken to jail. Id. Wilson arrived at the parole office at 4 p.m., but she was placed in handcuffs and taken to jail. Id. During booking, Wilson was asked for a urinalysis (UA). Id. Wilson asked if a female agent could assist her instead of a male agent, claiming the male agent towered over Wilson yelling in her face to take off her sweater. Id. at 13–14. The violation report for Wilson's booking states that "[w]hen they arrived at the jail Ms. Wilson was asked to produce a UA and refused, she was also asked for the code to her cell phone and she refused. She was verbally combative with Agents[,] . . . swearing[,] . . . wailing[,] and yelling at the jail staff[.]" Doc. 1-1 at 3. Wilson claims that the violation report for her booking was exaggerated and falsified. Doc. 1 at 13. Wilson requested to leave St. Francis House to go to work, but her clothing items were lost in the changing rooms. Id. at 14. Wilson alleges that she informed the officers her clothes were gone, and the agent said she could stay at St. Francis House and left. Id.

Wilson was transferred to the SDWP in Pierre, South Dakota. Id. Director of Parole Bradley Lewandowski[1] met with Wilson and offered her six months of incarceration for her ATL.

---

[1] Wilson refers to "Brad Lewindowski." See Doc. 1 at 13, 16. His name actually is "Bradley Lewandowski." The Court will refer to Lewandowski by the correct spelling of his name.

Id. Wilson declined and asked for an attorney because she felt that six months was harsh considering she was one day ATL and turned herself in. Id. Wilson claims that it was improper for Lewandowski to be involved in her case because she knew him personally from her prior employment. Id. at 16. Wilson alleges that Lewandowski's involvement was a conflict of interest and part of a conspiracy. Id. Wilson's parole was continued, and she was assigned a new parole officer, Andrew Knect. Id. at 14. On March 13, 2023, Wilson's parole was continued again; Wilson claims that Knect said he did not feel comfortable asking questions without the State present. Id. at 14–15.

On March 16, 2023, Wilson spoke with SD DOC Secretary Kellie Wasko about her parole status, and Wilson alleges that Wasko was upset because "it was done wrong." Id. at 15. Wilson's parole was reinstated that same day. Id. On March 17, 2023, Wilson learned that she was being released, and her parole address was approved within two hours. Id. Wilson alleges that "after being held in custody for 108 days, being taken from [her] job, [and] place to stay," she "was thrown out into the street of Pierre" without receiving the money in her accounts. Id. Wilson alleges that Defendants were biased, deceitful, and vindictive. Id. at 4. She claims that because she challenged her parole violation, Defendants placed her into a community she is not from without resources or the funds in her account. Id.

Wilson informed Doug Cook, a case manager at the SDWP, that the parole address she provided was for a man she met on a dating site and barely knew. Id. at 15. The address was to a mill. Id. Wilson told Cook that she "was scared to leave as [she] was on the run from human traffickers." Id. Wilson explained to Cook she was scared and claims that her "Case Manager Doug Cook, his Supervisor Andrea Fosheim, Kelly Flegal, the Warden, or even Kellie Wasko's goal after [she] had been imprisoned for no reason should have been compassion and followed

3

procedure." Id. at 15–16. Wilson claims that kicking her out was negligent. Id. at 16. Wilson's new parole officer, Lillie Tacke, as well as Nelda Nelson, Paula Tromrott, Officer Smart, and Cook were present each time she expressed fear of leaving. Id. at 16.

An ankle monitor was put on Wilson when she was released. Id. Wilson "didn't mind as [she] was being the interest of dirty cops (traffickers)[.]" Id. Wilson claims she was told that "if something happens, cut your monitor off[.]" Id. Wilson asked Tacke if she could go to the shelter in town, and Tacke said "at this point I'm not concerned where you go its [sic] just high priority to get you out." Id.

After Wilson was released on parole, Tacke contacted her asking if she tampered with the ankle monitor. Id. at 17. Wilson alleges that Tacke could have checked her location on the ankle monitor, but instead Tacke called Wilson or her employer. Id. Wilson received a ride from someone she met in prison because she did not have any money, and she "got high." Id. Tacke contacted Wilson informing her that she "better be in the office by 10:30 am[.]" Id. When they arrive at Tacke's office, Tacke required Wilson to provide a UA, and Wilson admitted using drugs. Id. at 18; Doc. 1-1 at 1–4. Tacke took Wilson to jail. Doc. 1 at 18. Wilson alleges that Defendants violated policies and procedures by not putting her in treatment during her parole. Id.

Wilson alleges there is no drug abuse treatment and no legal representative at the SDWP. Id. at 19. Wilson alleges that Wasko was retaliating against her by not granting her work release and by putting her in D Block. Id. Wilson claims that she is "constantly harassed and antaganized [sic]" and singled out. Id. She also claims that that she has received inappropriate things on her kites. Id. Wilson claims that the prison is understaffed and overcrowded and that she is incarcerated with people with severe mental illness, HIV, or hepatitis, and that inmates are at times out of toilet paper or soap for hours. Id. at 19–20.

4

Wilson was transferred from the SDWP to the Hughes County Jail. Doc. 12 at 1. She was moved to the Hughes County Jail after purchasing commissary at the SDWP but was not allowed to bring the commissary with her. Id. She had to purchase new commissary while only being paid $0.25 an hour. Id. Wilson alleges that there were no programs, earned discharge credits, or outside time at the Hughes County Jail. Id.

Wilson received mail from this Court regarding her ongoing case while at the SDWP, but she was not permitted to bring a piece of mail with her because it was opened. Id. at 1–2. She claims that she was permitted to bring other legal mail that had been opened. Id. Wilson also was not allowed to bring books that were mailed to her at the SDWP; Wilson claims that the Hughes County Jail does not have a legal library. Id. at 2.

Wilson asserts that "[i]t says in policy & ADA that if programs can[']t be accommodated [those incarcerated] could be released to facilities or treatments that can." Id. Wilson has borderline personality disorder, post-traumatic stress disorder, anxiety, and recurring depression; Wilson also suffers from addiction. Id. Wilson alleges that she is being retaliated against. Id. at 3. Wilson alleges that she never saw her case manager, Jessica Cambell, while she was in the Hughes County Jail. Doc. 17 at 1. She claims that she had to map her own parole plan without help or resources from the case manager. Id.

Wilson was returned to the SDWP. Id. Wilson alleges that she was transferred to an overcrowded visit room. Doc. 18 at 1. Thirty-six women were housed in the visit room, which had bolted shut windows and only one usable door. Id. Wilson also claims that the room had inadequate ventilation and was very hot. Id. On Thanksgiving, November 23, 2023, she and other inmates were woken up at 7:30 a.m. for breathalyzer tests. Id. She claims this was an unnecessary punishment because she was already forced to be away from her family on the holiday. Id.

She alleges that she was being retaliated against because of the lawsuit she filed in June 2023. Id. She claims that she was granted parole in October 2023, but she was not released. Id. She alleges that Cook, her case manager, abused his control because he did help her find a suitable parole plan to help her reintegrate into the community. Id. Wilson alleges that Cook told her that she is "no more important than anyone else[.]" Id. at 2. Wilson also claims that she is being picked on because she is waiting for phone numbers to be added to her list. Id.

Wilson sues the SD DOC, Wasko, Miller, Cook, and Fosheim. Doc. 1 at 1–2. Because Wilson does not specify whether she is suing Defendants in their individual or official capacities, the suit is treated as if only including official capacity claims. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995). Thus, Wilson sues all Defendants only in their official capacities.

Wilson asserts that Kellie Wasko deprived her of a successful parole plan because Wasko "was negligent in not abiding and following policy and procedures including proper transitioning, adequate education, vocation, programming, and denied drug & alcohol treatment." Id. at 4. Wilson suggests that "[d]ue process and prison reform [are necessary] to end abuse in inequalities in care & service[.]" Id.

Wilson alleges that Warden "Aaron Miller is aware and continues to violate [her] due process to drug & alcohol treatment[;] he is not upholding his constitutional duty to provide general treatment of prisoners to prevent recidivism." Id. Wilson states that "Doug Cook is aware and has [a] very close nexus to the conspiracy of symbolic relationships." Id. Wilson claims that "Andrea Foshiem is entwined, functioning under the color of law, to perform state actions of their job descriptions." Id. Defendants " 'pass the buck' when trying to figure out how to start exhausting remedies, and they won't provide resourceful legal representation." Id. Wilson states that because she challenged her parole violation, "Miller should've advocated better for [her]

6

personal well being. He should've supervised his case managers' mission, vision, and values, to insure [sic] a successful parole plan as anyone else, 'Equal protection[.]' " Id. at 5. Wilson sues Miller because "[h]e is aware of [inmates'] questions and concerns, he does not respond back to [their] complaints" alleging that he deprives human conditions of confinement. Id.

Wilson asks that this Court for "release, change, and relief[.]" Id. at 9. She asks this Court to reinstate her parole so that she can go to drug and alcohol treatment, which is not provided at her current facility, and asks that this Court order her to Center House or Missouri Shore. Id. at 7; Doc. 12 at 3. Wilson asks this Court to order her to be placed in a treatment facility where she can "get [her] mail, be rehabilitated, but most important have access to law books, internet for a real law library so [she] can affectively [sic] be on time meeting deadline & getting [her] mail." Doc. 12 at 3. She also requests a "rule 65 since the SDWP is retaliating against [her]." Doc. 1 at 7. Wilson requests a restraining order "[d]ue to being verbally abused & neglected. Writ of certiorari." Id. She does not specify against whom she requests the restraining order. Id.

**B.    Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per

7

curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation removed) (quoting Twombly, 550 U.S. at 556). Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C. Wilson's Causes of Action

#### 1. Class Action Claims

Wilson expresses a desire to establish a class of prisoners who are bringing one of Wilson's claims against Defendants. Doc. 1 at 9–12. Wilson filed four pages in her complaint signed by

eighty-five other inmates alleging that their rights have been violated. Id. She also provided three declarations from other inmates in her filings. See Doc. 11 at 40–42; Doc. 13; Doc. 14. Under Federal Rule of Civil Procedure 11(a), "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). "Pro se litigants may not represent the interests of other parties." Litschewski v. Dooley, 2012 WL 3023249, at *1 n.1 (D.S.D. July 24, 2012); see also Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."). Despite including some pages signed by other inmates, Wilson is the only inmate who is listed as the plaintiff on the cover sheet of the complaint and who signed most of the filings submitted to this Court; only Wilson's financial affidavit and prisoner trust account were submitted to this Court. See Doc. 1 at 1; Doc. 2; Doc. 3. Thus, to the extent that Wilson seeks to bring claims on behalf of other plaintiffs, she cannot do so. These claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

    **2.    Claims Against the SD DOC**

Wilson brings claims against the SD DOC seeking injunctive relief. Doc. 1 at 1. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines whether its powers were created by state law, the degree of its autonomy and control, and whether the funds to pay awards from judgments against it come from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985). The SD DOC was created by the state legislature and is a state entity. See SDCL § 1-15-1.2. The SD DOC is an arm of the state of South Dakota, and, as

such, is not subject to suit under § 1983. Wilson's claims against the SD DOC are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Injunctive Relief Claims against Defendants

Wilson alleges that while she was incarcerated at the Hughes County Jail and SDWP, her rights were violated. She only requested injunctive relief. Doc. 1 at 4, 7, 9; Doc. 12 at 1–3. The Eighth Circuit held that an "inmate's claims for declaratory and injunctive relief are moot when [s]he is transferred to another facility and is no longer subject to alleged unlawful conditions." Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 835 (8th Cir. 2009) (citing Pratt v. Corr. Corp. of Am., 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)). See also Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an inmate's transfer to a new facility weeks before a trial for violation of his First Amendment rights mooted his claims for injunctive relief); Wycoff v. Brewer, 572 F.2d 1260, 1262 (8th Cir. 1978) (holding that a prisoner's claims for injunctive relief for violation of his Fourteenth Amendment rights were moot when plaintiff was transferred to a different penitentiary). Wilson has been released on parole. See Offender Locator, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited Dec. 18, 2023). Because Wilson is no longer incarcerated, her claims for injunctive relief are moot and dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II. Motion for a Preliminary Injunction and Temporary Restraining Order

Wilson requested a "rule 65," which this Court construes as a motion for a preliminary injunction and temporary restraining order. Doc. 1 at 7. Preliminary injunctions and temporary restraining orders are used to preserve the status quo throughout a proceeding. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981); Inst. For Free Speech v. Jackley, 340 F. Supp. 3d 853, 858 (D.S.D. 2018) ("A temporary restraining order under Rule 65(b) is to

prevent immediate and irreparable harm and typically to preserve the status quo until the Court can hear from both sides."). Because this Court has dismissed all claims that Wilson alleged, her motion for a preliminary injunction and temporary restraining order, Doc. 1 at 7, is denied as moot.

### III.  Motion to Subpoena

Wilson filed a motion to subpoena twenty-five witnesses: thirteen of whom are correctional officers, three are past parole agents, eight are fellow inmates, and one's role is unspecified. Doc. 10 at 3. Because Wilson's complaint is moot, Wilson's motion to subpoena, Doc. 10, is denied as moot.

### IV.  Motion to Amend/Correct Monthly Fee

Wilson filed a motion to amend or correct the monthly payment for her initial filing fee. Doc. 15 at 1; Doc. 16. Wilson incorrectly asserts that her monthly payment is $20.00 a month. Id. In order to pay her filing fee, Wilson must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The fee Wilson pays monthly is based on the preceding month's income into her prisoner account; the fee is not a set monthly fee and instead varies on the amount of income credited to her prisoner account. See id. The installments will be collected pursuant to this procedure. Because collection of the filing fee is set according to 28 U.S.C. § 1915(b)(2), Wilson's motion to amend or correct the monthly payment of her initial filing, Doc. 16, is denied.

V.  **Conclusion**

Accordingly, it is

ORDERED that Wilson's class action claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Wilson's claims against the South Dakota DOC are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Wilson's claims for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Wilson's motion for a preliminary injunction and temporary restraining order, Doc. 1, is denied. It is further

ORDERED that Wilson's motion to subpoena, Doc. 10, is denied. It is finally

ORDERED that Wilson's motion to amend or correct the monthly payment of her initial filing, Doc. 16, is denied.

DATED December 19th, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE